MATTHEW RIGHETTI (SBN: 121012)
matt@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
The Presidio of San Francisco
220 Halleck Street, Suite 220
San Francisco, CA 94129
Tel: (415) 983-0900
Fax: (415) 397-9005

EDWARD J. WYNNE (SBN: 165819)
Ewynne@wynnelawfirm.com
**WYNNE LAW FIRM**
80 E. Sir Francis Drake Blvd., Ste. 3-G
Larkspur, CA 94939
Tel: (415) 461-6400
Fax: (415) 461-3900

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MAAG, ANTHONY BELL, WENDELL COVAL, and NICK STERNAD, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK, NATIONAL ASSOCIATION,<br><br>Defendant. | Case No.  3:21-CV-00031-H-LL<br><br>CLASS ACTION<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT (Civil Code, § 1798.150, *et seq*)**<br><br>**(2) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (Bus. & Prof. Code, § 17200)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, ROBERT MAAG, ANTHONY BELL, WENDELL COVAL and NICK STERNAD bring this lawsuit against U.S. BANK, NATIONAL ASSOCIATION ("Defendant" or "USB") on behalf of themselves and all others similarly situated ("Class" or "Class Members") for violation of their privacy rights. Plaintiffs allege, upon personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.  USB is entrusted with personal identifiable information ("PII")[1] of Plaintiffs and Class Members.

2.  On or about July 30, 2020, USB was the target of a massive data breach in which Plaintiff and Class Members were subject to an unauthorized access and exfiltration, theft, or disclosure of their PII ("Data Breach"). Outside parties accessed a trove of personal details about Plaintiff and Class Members—such as names, bank account routing numbers, and SSNs—stored on one of USB's computer servers. USB maintained the highly sensitive PII in a form that was neither encrypted nor redacted.

3.  In addition to violating the fundamental privacy rights of Plaintiffs and Class Members, the Data Breach has caused them to suffer ongoing economic damages and other actual damages. Because of the Data Breach, they face an increased risk of identity theft and concomitant expenses associated with mitigating that risk. Plaintiffs and Class Members require robust credit monitoring services and software to reasonably mitigate the danger of future identity theft and fraud.

4.  Plaintiffs bring this lawsuit on behalf of themselves and Class Members whose PII was compromised as a result of the Data Breach and USB's failure to (i) implement and maintain reasonable security procedures and practices appropriate to the nature of the PII; (ii) disclose its inadequate security procedures and practices; (iii) effectively monitor its systems

---

[1] As used herein, the term "PII" is intended to include the definition of personal information provided under Civil Code sections 1798.140, subdivision (o), and 1798.81.5, subdivision(d)(1).

1  for security vulnerabilities; and (iv) failure to timely detect, report, and disclose the Data
2  Breach.

3      5.    USB's conduct, as alleged herein constitutes an unfair business practice under
4  California's Unfair Competition Law (Bus. & Prof. Code, § 17200) ("UCL"), and violates the
5  California Consumer Privacy Act of 2018 (Civil Code, § 1798.150, *et seq.*) ("CCPA"), among
6  other violations.

## II. PARTIES

8      6.    At all relevant times, Plaintiff Robert Maag was and is a citizen of California,
9  residing in San Diego County. Plaintiff is a consumer and a customer of USB. He entrusted
10 his PII to USB. Plaintiff's non-encrypted and non-redacted PII was subject to an unauthorized
11 access and exfiltration, theft, or disclosure as a result of the Data Breach. This resulted in an
12 invasion of his privacy interests, loss of value of his PII, and has placed him at imminent,
13 immediate, and continuing risk of further identity theft-related harm. Plaintiff has spent
14 money on a credit monitoring service as part of a reasonable effort to mitigate against such
15 harm and will continue to incur such expenses on an ongoing basis.

16     7.    At all relevant times, Plaintiff Anthony Bell was and is a citizen of California,
17 residing in San Diego County. Plaintiff is a consumer and a customer of USB. He entrusted
18 his PII to USB. Plaintiff's non-encrypted and non-redacted PII was subject to an unauthorized
19 access and exfiltration, theft, or disclosure as a result of the Data Breach. This resulted in an
20 invasion of his privacy interests, loss of value of his PII, and has placed him at imminent,
21 immediate, and continuing risk of further identity theft-related harm. Plaintiff has spent
22 money on a credit monitoring service as part of a reasonable effort to mitigate against such
23 harm and will continue to incur such expenses on an ongoing basis.

24     8.    At all relevant times, Plaintiff Wendell Coval was and is a citizen of California,
25 residing in Solano County. Plaintiff is a consumer and a customer of USB. He entrusted his
26 PII to USB. Plaintiff's non-encrypted and non-redacted PII was subject to an unauthorized
27 access and exfiltration, theft, or disclosure as a result of the Data Breach. This resulted in an
28 invasion of his privacy interests, loss of value of his PII, and has placed him at imminent,

immediate, and continuing risk of further identity theft-related harm. Plaintiff has spent money on a credit monitoring service as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis.

9. At all relevant times, Plaintiff Nick Sternad was and is a citizen of California, residing in El Dorado County. Plaintiff is a consumer and a customer of USB. He entrusted his PII to USB. Plaintiff's non-encrypted and non-redacted PII was subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the Data Breach. This resulted in an invasion of his privacy interests, loss of value of his PII, and has placed him at imminent, immediate, and continuing risk of further identity theft-related harm. Plaintiff has spent money on a credit monitoring service as part of a reasonable effort to mitigate against such harm and will continue to incur such expenses on an ongoing basis.

### III. JURISDICTION AND VENUE

10. This Court has personal jurisdiction over USB because it conducts a major part of its operations with regular and continuous business activity in California. The claims of Plaintiffs and the Class arise out of USB's business activity in California and, at all times herein mentioned, USB was performing services for Plaintiffs and the Class which were to be performed in California.

11. Venue is proper in this Court because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from San Diego. Venue is also proper under Business & Professions Code section 17203.

12. This is a class action brought pursuant to Federal Rule of Civil Procedure 23, and this Court has jurisdiction over the Plaintiffs' claims because the amount in controversy exceeds this Court's jurisdictional minimum.

### IV. FACTUAL ALLEGATIONS

13. In performing banking services to Plaintiffs and the Class, USB collected, received, took possession, retained, stored, and maintained a database containing the PII of Plaintiffs and Class Members. USB alone, or jointly with others, determined the purposes and means of processing such PII.

14. Plaintiffs are informed and believe and on that basis allege that USB has annual gross revenues in excess of twenty-five million dollars ($25,000,000), and alone or in combination, annually buys, receives for the business's commercial purposes, sells, or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices.

15. According to the Notice of Data Breach sent by USB, "a computer server containing [Plaintiff and the Class Members] information was physically stolen from one of [USB's] corporate offices." On or about July 30, 2020, USB was the target of a widespread Data Breach in which nonredacted and nonencrypted PII of its customers that was stored on that server was accessed and compromised. USB did not attempt to notify Plaintiffs or other affected Class Members until early September of 2020.

16. As set forth in the Notice of Data Breach, the compromised PII of Plaintiffs' and the Class Members' includes, without limitation, the following categories of highly sensitive information: (1) Name; (2) Account number; and (3) SSN.

17. The Data Breach has subjected Plaintiffs and the other Class Members to an unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted PII, including, but not limited to, PII that falls within the definition of subparagraph (A) of paragraph (1) of subdivision (d) of Civil Code section 1798.81.5.

18. The Data Breach resulted from USB's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII.

19. PII.on information and belief, USB breached its standard of care by failing to implement reasonable security procedures to adequately protect Class Members' PII—which was not password protected, redacted, or encrypted—from data breaches. Data breaches, such as this one, are commonly made possible through a vulnerability in a system or server.

20. As a result of USB's lax security, outside parties have gained access to Plaintiffs' and Class Members' PII in a readily usable form that is of great value to them. Plaintiffs and Class Members are thus exposed to criminals seeking to use their PII for nefarious and illegal activities, such as identity theft schemes. Given the sensitive nature of the

PII, Plaintiffs and Class Members face an immediate, concrete, and ongoing risk of identity theft.

21. At all relevant times, USB knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including the significant costs, damages and harm that would be imposed on Plaintiff and the Class.

22. Over the past several years, large data breaches, such as the one that occurred here, have garnered widespread media attention and have been the focus of protective legislation and scrutiny by law enforcement and the media. Ignoring the known risk, USB's approach to maintaining the security of the PII of Plaintiffs and Class Members, including without limitation, failing to, at a minimum, encrypt or password protect such information, was well-below the standard of care.

23. State and federal agency guidelines strongly encourage encrypting information stored on computer networks and servers. In fact, failure to adequately and reasonably protect PII, as USB has failed to do for Plaintiffs and members of the Class, is an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

24. As a result of the Data Breach, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and the Class are also subject to a higher risk of phishing and pharming, where hackers exploit information that they have already obtained in an effort to procure even more PII. Moreover, Plaintiffs and the Class now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities. Further, Plaintiffs and Class Members have experienced a loss of value of their PII as a result of the Data Breach. Given that Class Members are currently at risk of identity theft or credit fraud, prophylactic measures, such as the purchase of credit monitoring services and software, are reasonable and necessary to prevent and mitigate future loss.

### *California Recognizes the Importance of Protecting PII*

25. The CCPA affords California residents security protections and rights to learn about and control how a business handles their personal information. The Legislature requires businesses to implement adequate standards to protect PII:

> It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information.

(Civ. Code, § 1798.81.5, subd. (a)(1).)

26. The CCPA further endows on California residents the right to bring an action for statutory damages if their information is subject to a data breach that is "a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." (Civil Code, § 1798.150.)

27. USB itself purports to recognize the importance of protecting PII – claiming in its data breach notice that "we value your confidence in us and place the privacy and security of your information as a top priority."

### *PII Is Valuable to Hackers and Thieves*

28. Hackers and criminals recognize the value of PII. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and financial fraud. PII can also be sold on the dark web or used to clone a credit card.

29. Once hackers obtain access to PII, it can then be used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. Other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family and friends.

30. Access to PII provides criminals further opportunity to hack into email accounts. Since most online accounts require an email address, not only as a username but also to verify accounts and reset passwords, a hacked email account can provide access to additional identity theft opportunities.

31. Hacked PII also allows thieves to obtain other personal information through "phishing." For example, according to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers, and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[2]

32. Industry experts have reported that one in every three people who is notified of being a potential fraud victim becomes one. In the case of a data breach, simply reimbursing a consumer for a financial loss due to identity theft and fraud does not necessarily make that individual whole. The Department of Justice's Bureau of Justice Statistics ("BJS") has found, "among victims who had personal information used for fraudulent purposes" a significant percentage of victims spent a month or more resolving problems, with some even taking more than year.[3]

33. A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years. In addition, a victim may not become aware of fraudulent charges when they are nominal because typical fraud-prevention algorithms fail to capture such charges. Those charges may be repeated, over and over, without detection.

***Annual Monetary Losses from Identity Theft are in the Billions of Dollars***

34. Losses from identity theft reached $21 billion in 2013. (*See* 2013 Javelin Strategies Identity Fraud Report.) According to the BJS, an estimated 17.6 million people

---

[2] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf (accessed on August 24, 2020).

[3] "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (accessed on August 24, 2020).

were victims of one or more incidents of identity theft in 2014.

35. There often can be a time lag between the theft of PII and when the harm occurs or is discovered. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[4]

### *Plaintiffs and Class Members Have Suffered Ongoing Damages*

36. As a direct and proximate result of the Data Breach caused by USB's wrongful actions and inaction, Plaintiffs and Class Members have been placed at an imminent and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate any actual or potential impact of the Data Breach. Plaintiffs and Class Members now must reasonably incur the ongoing expense of surveilling their financial and personal records and monitoring. They are subject to a higher risk of phishing and pharming schemes, through which hackers exploit the ill-gotten PII to procure additional private information. In addition, Plaintiffs and Class Members run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

37. The Data Breach has caused Plaintiffs and Class Members to suffer ongoing economic damages and other actual harm for which they are entitled to compensation, including, but not limited to, the following:

   (i)   lost or diminished value of PII;

   (ii)  out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

---

[4] See GAO, Report to Congressional Requesters, at 33 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (accessed on August 24, 2020).

    (iii)    lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach including but not limited to loss of time;

    (iv)    deprivation of rights under the UCL and CCPA; and

    (v)    an increased risk to their PII, which has been compromised and thus (a) is subject to criminal access and abuse; and (b) remains in USB's possession and is subject to further unauthorized disclosures so long as USB fails to undertake appropriate and adequate measures to protect the PII.

## V. CLASS ALLEGATIONS

38. Plaintiffs bring this action on his own behalf and on behalf of a class of individuals pursuant to Fed.R.Civ.P. 23. Plaintiffs intend to seek certification of a class defined as follows:

> **All USB customers who reside in California and whose PII was accessed or otherwise compromised in the Data Breach, which, according to the Notice of Data Breach provided by USB, occurred on or about July 30, 2020.**

Excluded from the Class are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39. **Numerosity**. The members of the Class are so numerous that joinder of all Class Members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of USB customers in California and information provided by USB about the Data Breach, the number of Class Members is at least in the thousands. Class Members are readily identifiable from information and records maintained by USB.

40. **Commonality and Predominance.** This action involves questions of law and

fact common to Class Members that predominate over any questions affecting individual Class Members. These common questions of law and fact include, without limitation:

    a. When USB actually learned of the Data Breach;

    b. Whether USB adequately detected, disclosed and responded to the Data Breach;

    c. Whether USB owed a duty to the Class to exercise due care in collecting, encrypting, password protecting, storing, safeguarding and/or maintaining their PII;

    d. Whether USB implemented and maintained reasonable security procedures and practices appropriate to the nature of the PII;

    e. Whether USB breached its duty of care;

    f. Whether USB knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

    g. Whether USB adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

    h. Whether USB caused Plaintiffs and Class Members to incur damages;

    i. Whether USB violated the law by failing to timely and promptly notify Plaintiff and Class Members that their PII had been compromised;

    j. Whether Plaintiffs and the other Class Members are entitled to credit monitoring and other monetary relief;

    k. Whether USB violated California's UCL;

    l. Whether Class Members are entitled to statutory damages, special or general damages, civil penalties and/or public injunctive relief; and

    m. Whether USB violated CCPA by failing to maintain reasonable security procedures and practices appropriate to the nature of the PII.

41. **Typicality**: Plaintiffs' claims are typical of those of other Class Members because all had their PII accessed and compromised as a result of the Data Breach, due to

USB's wrongful conduct, acts, or omissions.

42. **Adequacy**: Plaintiffs' interests are not antagonistic and do not irreconcilably conflict with the interests of the Class. Plaintiffs are represented by attorneys who are competent and experienced in consumer and privacy-related class action litigation.

43. **Superiority and Manageability**: A class action is superior to other available group-wide methods for the fair and efficient adjudication of this controversy because the individual damage and harm suffered by each individual Class Member may be relatively small compared to the expense and burden of prosecuting such an individual case, and the difficulty of discovering and remedying the wrongdoing of USB. If individual Class Members were required to bring separate actions, courts would be confronted by a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

44. USB has acted on grounds generally applicable to the entire Class, thereby making final public injunctive relief and/or declaratory relief appropriate with respect to the Class as a whole.

45. Likewise, certain issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

    a. Whether USB owed a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b. Whether USB breached a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c. Whether USB failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d. Whether USB has failed to implement and maintain reasonable security

procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

  e. Whether Class Members are entitled to actual damages, statutory damages, credit monitoring or other public injunctive relief, as a result of USB's wrongful conduct.

46. Notice of the pendency of and any resolution of this action can be provided to the Class Members by individual mailed notice or the best notice practicable under the circumstances.

## FIRST CAUSE OF ACTION

[Violation of the California Consumer Privacy Act ("CCPA"), Cal. Civil Code Sec. 1798.150, et seq.]

[Brought by Robert Maag Only]

47. Plaintiff Robert Maag, only, incorporates the allegations contained in the foregoing paragraphs as though repeated here.

48. Civil Code section 1798.150, subdivision (a)(1), provides,

Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

(A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

(B) Injunctive or declaratory relief.

(C) Any other relief the court deems proper.

49. On information and belief, USB took possession, retained, stored, and maintained a database containing the nonencrypted and nonredacted PII of Plaintiff and the Class. USB collects or receives such information and alone, or jointly with others, determines the purposes and means of the processing of such PII.

50. As a result of the widespread Data Breach nonredacted and nonencrypted PII of Plaintiff and thousands of other Class Members that was stored on that server was compromised, accessed, and subject to exfiltration, theft or disclosure.

51. The Data Breach subjected Plaintiff and the other Class Members to an unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted PII, including, but not limited to, PII that falls within the definition of subparagraph (A) of paragraph (1) of subdivision (d) of Civil Code section 1798.81.5.

52. The Data Breach was a result of USB's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

53. Due to the Data Breach, Plaintiff and the Class Members have suffered injury in fact and monetary damages, in an amount to be proven at trial, but in excess of the minimum jurisdictional amount of this Court.

54. Plaintiff seek to recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per Class Member per incident or actual damages, whichever is greater; injunctive or declaratory relief; and/or any other relief the court deems proper.

55. Prior to filing this CCPA claim, Plaintiff provided thirty days written notice to USB, "identifying the specific provisions of the CCPA the consumer [Plaintiff] allege[] have been or are being violated." USB did not respond to the notice. USB could not and did not cure the violation within the time provided under the CCPA; compensate Plaintiff or otherwise provide any remedy for the harm caused by the violation.

/ / /

/ / /

/ / /

## SECOND CAUSE OF ACTION

[Violation of California's Unfair Competition Law
Cal. Bus. & Prof. Code §17200 – Unlawful Business Practices]

[ Brought by All Plaintiffs]

56. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as though repeated here with the exception of the allegations of the First Cause of Action.

57. Defendant engaged and continues to engage in acts and practices of unfair competition, as that term is defined in Business & Professions Code section 17200, including unlawful, unfair or fraudulent business acts or practices.

58. Defendant engaged in unlawful acts and practices by failing to implement reasonable and adequate data security practices and procedures, as described herein, by obtaining Plaintiffs' and Class Members' PII with knowledge that the information would not be adequately protected; by storing Plaintiff's and Class Members' PII in an unsecure electronic environment; and by failing to timely detect and report the Data Breach.

59. Defendant violated Civil Code section 1798.81.5, which requires Defendant to take reasonable methods of safeguarding the PII of Plaintiff and the Class Members.

60. Defendant also engaged in unlawful acts and practices, by failing to disclose the Data Breach, including to Plaintiff and Class Members in a timely and accurate manner, which violates Civil Code section 1798.82. To date, Defendant has still not provided full and accurate information regarding the Data Breach to Plaintiffs and the Class Members.

61. Defendant's failure to implement and maintain reasonable security measures to protect the PII additionally constitutes a statutory violation which forms the predicate for a UCL claim by violating Section 5 of the FTC Act, 15 U.S.C. Section 45.

62. Defendant's business practices are unfair under the UCL because it has acted in a manner that is unethical, oppressive, and/or substantially injurious to Plaintiff and the Class Members. The exposure of their PII to third parties is substantially injurious because of the significant harm that can result. The harmful impact of Defendant's practice far outweighs any

possible countervailing benefits.

63. On information and belief, Defendant uses Plaintiffs' and Class Members' PII for profit and financial gain, receive money or property to protect PII, for the benefit of Plaintiff and the Class, but failed to implement adequate security policies and practices.

64. As a result of Defendant's unlawful and unfair business practices as alleged herein, Plaintiff suffered injury in fact and lost money or property. Among other things, Plaintiff and Class Members are entitled to recover the price received by Defendant for the services described herein, the loss of Plaintiffs' and Class Members' legally protected interest in the confidentiality and privacy of their PII, and additional losses as described above.

65. Defendant knew or should have known that its computer systems and data security practices and procedure were inadequate to safeguard Class Members' PII and that the risk of a data breach or theft was likely.

66. Pursuant to Business & Professions Code §§ 17203 and 17204, the Court may issue a public injunction enjoining such conduct in the future on behalf of Plaintiffs, the Class and the general public; obtain a provision for a corrective notice; and compel Defendant to restore to Plaintiffs and Class Members any money or property that Defendant may have acquired or retained as a result of any act or practice that constitutes unfair competition.

67. Plaintiffs seek restitution to Plaintiffs and Class Members of money or property that Defendant may have acquired by means of their business practices alleged herein, including monetary restitution because of such practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and public injunctive or other equitable relief. Plaintiffs and Class Members also lost legally protected interest in the confidentiality and privacy of their PII, and suffered additional losses as described above.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, requests judgment against the Defendant and that the Court grant the following:

A. An order certifying the Class as defined herein, and appointing Plaintiffs and their Counsel to represent the Class;

B. An order for a public injunction enjoining Defendant from engaging in the wrongful conduct alleged herein and ordering Defendant to implement industry standard safety protocols for the protection of Plaintiffs' and Class Members' PII (which is still in the possession of Defendant);

C. An order instructing Defendant to purchase or provide funds for adequate credit monitoring services for Plaintiffs and all Class Members;

D. An award of compensatory and statutory damages, in an amount to be determined, including statutory damages pursuant to the CCPA;

E. An award for equitable relief and restitution as a result of Defendant's wrongful conduct;

F. An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law;

G. Nominal damages; and

H. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues so triable.

Respectfully Submitted,

DATED: February 2, 2021

**WYNNE LAW FIRM, LLP**
**RIGHETTI GLUGOSKI, P.C.**
Edward J. Wynne
Matthew Righetti

*Attorneys for Plaintiff*

By_____
   Matthew Righetti

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first-class postage prepaid, to all counsel of record in this matter.

By:  /s/ Lesley E. Phillips
     Lesley E. Phillips